**Thomas FERRICK and Janice Ferrick, Appellees**

v.

**Edward W. BIANCHINI and SAB, LLC, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 30, 2013.

Filed May 14, 2013.

Linda T. Jacobs, Philadelphia, for appellants.

Lathrop B. Nelson, III, Philadelphia, for appellees.

BEFORE: STEVENS, P.J., BOWES, and PLATT,* JJ.

## OPINION BY BOWES, J.:

Edward W. Bianchini and SAB, LLC (collectively "Tenant") appeal from the October 31, 2011 order denying their petition to open or strike a confessed judgment arising from a commercial property lease between the parties. After careful review, we affirm.

On April 17, 2009, Edward Bianchini entered into a ten-year lease with 12th Street Property LLC[1] ("Landlord"), the owner of a building located at 114 South 12th Street in Philadelphia (the "premises"). Mr. Bianchini planned to operate a high-end restaurant called "Tweed" on the premises, and the lease specifically restricted use of the property to a "bar and restaurant serving alcoholic beverages for consumption." Net Lease § 1. In addition, Tenant leased the premises in "AS IS" "WHERE IS" condition, and all improvements necessary or desired by Tenant were the sole responsibility of Tenant. *Id.* at §§ 8(B)(vi) and (C). The lease also contained a conspicuous cognovit clause that entitled Landlord to confess judgment in the case of default. *Id.* at § 21(A)(iv)(h) and (i). The cognovit clause recited that the warrant of attorney could be exercised multiple times in the event of default for default in payment of rent and it also provided for accelerated rent and possession of the property.[2] *Id.* Mr. Bianchini initialed the confession of judgment clause and signed the lease.

On April 27, 2009, Mr. Bianchini assigned the lease to SAB, LLC, but remained liable under its provisions as a guarantor. The assignment and guaranty each contained a cognovit clause, and Mr. Bianchini signed the documents both in his individual capacity and as a Member of SAB, LLC. An amendment to the net lease and assignment and assumption of liability agreement was subsequently executed in spring 2010. That document altered paragraph 2D of the net lease to reduce monthly rent from $12,500 to $10,500 for the period commencing on March 1, 2010, and continuing for forty-eight consecutive months thereafter. On page two, Tenant

---

* Retired Senior Judge assigned to the Superior Court.

1. Following the filing of the notice of appeal, 12th Street Property, LLC, transferred its interest in the judgment "to the use of Janice Ferrick and Thomas Ferrick," Appellees herein. *See* Application to Substitute Appellee; Praecipe to Mark Judgment to the Use of Janice Ferrick and Thomas Ferrick. On July 16, 2012, this Court granted the Ferricks' motion to be substituted in the within appeal and the caption was amended to reflect the substitution.

2. The cognovit clause provided:

 "The warrant of attorney herein granted shall not be exhausted by one or more exercises thereof but successive actions may be commenced and successive judgments may be confessed or otherwise entered against assignee from time to time as often as any of the rent and/or other amounts and sums shall fall or be due or be in arrears[.]"
 Net Lease, § 21(A)(iv)(h)(ii).

agreed that the confession of judgment provisions of the original lease and assignment would continue. Mr. Bianchini's signature, individually, and on behalf of SAB, appeared on page three of the three-page document.

Tenant fell into arrears on his rent and other charges, and consequently, Landlord sent Tenant notice of default on June 14, 2011. Complaint ¶ 11. A second letter was sent on August 16, 2011. *Id.* On August 22, 2011, Landlord filed a complaint in confession of judgment and averred that Tenant was in default for failing to pay rent, taxes, insurance, and utilities and for vacating and abandoning the leased premises prior to the expiration of the lease term. Complaint ¶ 9. Landlord sought both past due rent and charges totaling more than $80,000, together with accelerated rent and fees for the remaining eight years of the lease term, for a total judgment in excess of $1.5 million. Notice of the confessed judgment was served with the writ of execution.

On September 22, 2011, Tenant filed a petition to strike and/or open the confessed judgment pursuant to Pa.R.C.P. 2959, and requested that the trial court issue a rule to show cause pursuant to that rule. Landlord was directed to file a response to the petition on or before October 12, 2011, and Landlord complied. Before any action was taken on the petition, however, Landlord obtained a temporary order for injunction to prevent Tenant from transferring fixtures in the property. On October 25, 2011, there was a hearing to determine whether relief was appropriate and, at that time, the parties brought to the court's attention the pending petition to strike or open the judgment. That same day, the court denied Tenant's petition to open or strike the confessed judgment and request for stay of execution, and dissolved Landlord's motion for preliminary injunction.[3] On November 22, 2011, Tenant moved for reconsideration of the order and a stay of execution, which the trial court failed to address. Tenant timely filed an appeal to this Court on November 30, 2011, followed by a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court issued its Rule 1925(a) opinion.

Tenant presents nine issues for our review:

1. Did the trial court err in failing to issue a rule to show cause permitting the parties to take discovery following the filing of Appellants' Petition to Strike or Open Confessed Judgment and for a Stay (the "Petition")?

2. Did the trial court apply the appropriate standard of review when adjudicating the Petition?

3. Did the trial court err in finding that the cognovit clause from the original Lease was properly incorporated in the Amendment to the Lease and, thus, enforceable in this action?

4. Did the trial court err in finding that the prior exercise of Appellee's warrant of attorney in *12th Street Property, LLC v. Edward Bianchini,* November Term 2010, C.C.P. Phila., No. 03448, a prior separate action, did not exhaust the warrant?

5. Did the trial court err in finding that Appellee's previous breach of the Lease by failing to timely transfer a liquor license did not void the Lease

---

3. Tenant maintains that the trial court abused its discretion in denying its petition to open and/or strike less than two hours after the conclusion of the hearing, pointing to the fact that the petition consisted of almost five hundred pages of documents and the court's admission that it had not previously seen the document. However, at the injunction hearing, the court verified that the petition had been assigned to a law clerk for review.

and, thus, void the warrant of attorney?

6. Did the trial court err in failing to find that Appellee's Confessed Judgment constituted a double recovery given that Appellee ejected Appellants from the Premises prior to confessing judgment for fully accelerated rent?

7. Did the trial court err in declining to strike the Confessed Judgment as grossly excessive and inequitable when Appellants were forced to spend in excess of $700,000 on permanent leasehold improvements?

8. Did the trial court err in declining to use its equitable authority to open the Confessed Judgment to provide Appellants with an equitable credit to compensate them for the value of their permanent leasehold improvements?

9. Did the trial [court] err in declining to issue a stay pursuant to Pennsylvania Rule of Civil Procedure 2959?

Tenant's brief at 4–5.

■■■ Our review is informed by the following principles. A confessed judgment will be stricken "only if a fatal defect or irregularity appears on the face of the record." *Graystone Bank v. Grove Estates, LP*, 58 A.3d 1277 (Pa.Super.2012). A judgment by confession will be opened if the petitioner acts promptly, alleges a meritorious defense, and presents sufficient evidence in support of the defense to require the submission of the issues to a jury. *Crum v. F.L. Shaffer Co.*, 693 A.2d 984 (Pa.Super.1997). In adjudicating the petition to strike and/or open the confessed judgment, the trial court is charged with determining whether the petitioner presented sufficient evidence of a meritorious defense to require submission of that issue to a jury. *Homart Development Co. v. Sgrenci*, 443 Pa.Super. 538, 662 A.2d

1092 (1995). A meritorious defense is one upon which relief could be afforded if proven at trial. *Fox v. Mellon*, 438 Pa. 364, 264 A.2d 623 (1970).

■■■ In examining the denial of a petition to strike or open a confessed judgment, we review the order for an abuse of discretion or error of law. *PNC Bank v. Bluestream Tech., Inc.*, 14 A.3d 831, 835 (Pa.Super.2010).

> In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, i.e., the complaint and the documents which contain confession of judgment clauses. Matters dehors the record filed by the party in whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken. However, if the truth of the factual averments contained in such record are disputed, then the remedy is by a proceeding to open the judgment and not to strike. An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.
>
> ... When determining a petition to open a judgment, matters dehors the record filed by the party in whose favor the warrant is given, i.e., testimony, depositions, admissions, and other evidence, may be considered by the court. An order of the court opening a judgment does not impair the lien of the judgment or any execution issued on it.

*Hazer v. Zabala*, 26 A.3d 1166, 1169 (Pa.Super.2011).

In *Graystone, supra*, we reaffirmed the need for strict adherence to rules governing confessed judgments. As a matter of public policy, Pennsylvania applies a similar strict standard to establish the validity of a cognovit clause. This is so

because "a warrant of attorney to confess judgment confers such plenary power on the donee in respect of the adjudication of his own claims that certain specific formalities are to be observed in order to effectuate the granting of such a power." *Frantz Tractor Co. v. Wyoming Valley Nursery*, 384 Pa. 213, 120 A.2d 303, 305 (1956). Accordingly, "[a] Pennsylvania warrant of attorney must be signed. And it will be construed strictly against the party to be benefited by it, rather than against the party having drafted it." *Egyptian Sands Real Estate, Inc. v. Polony*, 222 Pa.Super. 315, 294 A.2d 799, 803 (1972) (citations omitted). "A warrant of attorney to confess judgment must be self-sustaining and to be self-sustaining the warrant must be in writing and signed by the person to be bound by it. The requisite signature must bear a direct relation to the warrant of attorney and may not be implied." *L.B. Foster Co. v. Tri–W Const. Co.*, 409 Pa. 318, 186 A.2d 18, 20 (1962) (emphasis added).

*Graystone, supra* at 1282.

Tenant's first two issues involve challenges to the manner in which the trial court addressed the petition. Tenant contends that the trial court erred in failing to issue a rule to show cause, as Tenant filed a "detailed Petition" containing "seven core arguments that were fully briefed and supported with citation to well-settled and binding authority and factually supported with documentation" and the appropriate verification. Appellants' brief at 21. Ten-

ant maintains that had the court issued the rule, it would have been entitled to conduct discovery to prove that the judgment was grossly excessive in light of the expensive permanent improvements it made to the premises. Furthermore, Tenant suggests that the additional time allotted for discovery would have permitted it to prove that Landlord re-let the premises and was collecting rent from the new tenant in mitigation of damages.

Tenant relies upon Pa.R.C.P. 2959(b), Phila.Civ.R. 206.4(c), and *Ohio Pure Foods, Inc. v. Barbe*, 548 Pa. 373, 697 A.2d 252, 254 (1997), in support of its contention that issuance of a rule was mandatory on the facts herein. Tenant cites *Ohio Pure Foods, supra*, for the proposition that "only a minimal offering is needed to satisfy the requirements for the issuance of a rule to show cause" under Pa.R.C.P. 2959(b), which provides "If the petition states prima facie grounds for relief the court shall issue a rule to show cause and may grant a stay of proceedings." Tenant contends that it more than satisfied that threshold. *Id.* at 254. In addition, Tenant relies upon Phila.Civ.R. 206.4(c) for the proposition that a rule should have automatically issued even without any *prima facie* showing of merit.[4]

Landlord counters that the trial court correctly declined to issue a rule to show cause because the petition herein did not state a *prima facie* ground for relief. Pa. R.C.P. 2959(b). Furthermore, even if a rule had issued, the court was not obligated to authorize discovery. *See Ohio Pure*

---

4. Phila.R.Civ.P. 206.4(c) provides:

The Rule to Show cause process set forth in Pa.R.C.P. 206.6 is hereby adopted for all petitions filed pursuant to Pa.R.C.P. 206.1 *et seq.* Upon the filing of a petition, a rule to show cause shall be issued as of course by the Motion Court clerk on behalf of the Court. The form of rule to show cause order shall be substantially as set forth

hereunder. To obtain a stay of proceedings, the filing party shall specifically set forth in the petition the reasons why the stay is required, and shall further indicate on the *Petition/Motion Cover Sheet* that a stay has been requested. The Court may schedule a conference on the request for stay, or grant or deny the stay *ex parte*. (emphasis in original).

*Foods, supra.* Moreover, Landlord contends that no rule should have issued to permit Tenant to substantiate that the judgment was grossly excessive, that the re-letting of the premises warranted a reduction in the amount of the judgment, and that the confession of judgment resulted in a double recovery because such challenges to the validity and amount of the debt do not constitute *prima facie* grounds for relief.[5] Finally, Landlord suggests that although the motions clerk may have failed to issue a rule to show cause pursuant to Phila.Civ.R. 206.4(c), the essence of the rule was complied with and there was no abuse of discretion. Landlord was directed to file a response within twenty days of the filing of the petition, and the court had the benefit of the hearing on Landlord's petition for relief.

We hold first that Phila.Civ.R. 206.4 did not compel issuance of a rule to show cause because a petition to strike or open a confessed judgment is not a petition delineated in Pa.R.C.P. 206.1 or Phila.C.R. 206.1(a).[6] *Compare Cid v. Erie Insurance Group,* 63 A.3d 787 (Pa.Super.2013) (holding petition to appoint arbitrator and compel UIM arbitration subject to Phila.C.R. 206.1 and Pa.R.C.P. 206.1). Despite that fact, however, it appears that the procedure outlined in Phila.Civ.R. 206.4 for automatic issuance of a rule was followed herein. The record reflects that when Tenant filed its petition, an answer/response date of October 12, 2011, was noted on the cover sheet. The cover sheet also stated that the petition and answer, if any, would be forwarded to the court after the answer response date. Landlord timely filed its answer, and the court disposed of the rule on petition, answer and briefs, with the added benefit of information acquired at the hearing on Landlord's petition for relief. Thus, the procedure followed was substantially the equivalent of the procedure where a rule issues either pursuant to Pa.R.C.P. 2959 or Phila.Civ.R. 206.4.

Tenant's assumption that discovery was automatic following issuance of a rule is unsupported. Moreover, Tenant misses the mark with its contention that discovery would have allowed it to prove that the amount of the judgment was grossly excessive due to the permanent improvements it made to the leased premises. Preliminarily, we question why Tenant required discovery to prove the extent of the improvements it made to the leased premises; that information was within its control, as evidenced by the documentation attached to the petition. More importantly, since Tenant took the leased premises "as is" and agreed that all improvements would inure to Landlord's benefit, we fail to see how such proof would support a finding that the judgment was excessive. Finally, Tenant's contention that the delay occasioned by discovery would have permitted it to obtain proof that Landlord later re-let the

---

5. In the petition to strike and/or open the confessed judgment, Tenant did not allege that the premises had been re-let. Furthermore, nothing in the record indicates that Landlord re-leased the premises. However, the impression created by the parties at oral argument was that the premises had been subsequently re-let.

6. Pa.R.C.P. 206.1(a) defines a petition as
 (1) An application to open a default judgment or a judgment of non pros, and
 (2) Any other application which is designated by local rule, numbered Local Rule 206.1(a), to be governed by Rule 201.1 et seq.

 Phila.Civ.R. 206.1(a). The Rule lists eight additional petitions governed by the procedures set forth in Pa.R.C.P. 206.1, including petitions to appoint arbitrator, to appoint a receiver, to compel arbitration, to confirm or set aside arbitration award, to confirm settlement, for contempt, and statutory petitions.

premises to another tenant and was collecting double rent affords no basis for relief as such proof would not have constituted a meritorious defense to the confessed judgment for the reasons that follow.

Next, Tenant alleges that the trial court failed to apply the correct principles of strict review and close scrutiny when it adjudicated the petition. In essence, Tenant contends that the court failed to view the evidence in the light most favorable to it. The only support Tenant offers for this contention is that, had the court done so, it would have found that the lease was null and void, that it did not contain a valid warrant of attorney, that the warrant was extinguished by a prior exercise, that the confessed judgment amounted to an unlawful double recovery, and that the judgment was grossly excessive. Appellant's brief at 25–26.

Herein, the trial court recited the proper legal standard. Furthermore, while Tenant acted promptly and argued that the lease was null and void and that the lease and its cognovit clause was extinguished or unenforceable, Tenant's arguments were largely refuted by the terms of the lease and applicable law. The trial court concluded that the signed lease, assignment, and amendment were valid, that the rent in arrears and accelerated rent were not confessed in a prior confession of judgment action, and that the repeated use of the warrant to collect successive portions of the debt was permitted. Furthermore, the incorporation of the cognovit clause in the amendment was sufficiently clear and express to bind Tenant. As we address each of Tenant's issues, mindful of the proper standard, we concur with the trial court's disposition.

 Tenant alleges that the trial court erred in finding that the cognovit clauses from the original lease, assignment, and guaranty were properly incorporated in the amendment to the lease and binding upon Tenant. Tenant contends that in order to be enforceable herein, the cognovit clause also had to be contained in the body of the amendment, not merely incorporated by general reference.[7] It cites *Cutler Corp. v. Latshaw*, 374 Pa. 1, 97 A.2d 234 (1953), and *Frantz Tractor Co., Inc. v. Wyoming Valley Nursery*, 384 Pa. 213, 120 A.2d 303 (1956), in support of that proposition. Otherwise, Tenant asserts, its signature on the original lease cannot bear the necessary "direct relation to the provision authorizing the warrant." Appellant's brief at 32, quoting *Frantz Tractor, Co., supra* at 305 (emphasis omitted).

Landlord counters that Mr. Bianchini signed and was personally bound by the terms of the lease and guaranty, both of which contain valid confession of judgment clauses. Mr. Bianchini, personally, and on behalf of SAB, LLC, also executed the assignment, which contained a valid cognovit clause. The only purpose of the amendment was to effect a temporary reduction of monthly rent; all other provisions remained the same. The amendment specifically recited that the confes-

7. The identical argument advanced by Tenant herein was asserted in *M & P Mgmt., L.P. v. Williams*, 594 Pa. 489, 937 A.2d 398, 400 (2007). Therein, Williams filed a petition to strike the confessed judgment two years after notice of its entry, and relied upon *Egyptian Sands Real Estate, Inc. v. Polony et ux.*, 222 Pa.Super. 315, 294 A.2d 799 (1972) and *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir.1994) for the proposition that a confession of judgment was void because the clause was not expressly contained in any amendment to a document containing the original cognovit clause. However, since the Court held that the thirty-day limitation period for striking a confessed judgment in Pa.R.C.P. 2959 rendered Williams's petition to strike the judgment untimely, it dismissed the appeal without reaching the merits of that issue.

sion of judgment provisions "are hereby republished and both Tenant and Assignee agree to be bound thereby in accordance with the terms thereof." Amendment to Both Net Lease Agreement and Assignment and Assumption of Net Lease Agreement ("Amendment") at 2. Landlord contends that Tenant is bound because Mr. Bianchini signed the cognovit clause where it appeared; the fact that the lease was amended does not render the cognovit clause in the original lease invalid.

Landlord distinguishes the cases involving amendments cited by Tenant where confession of judgment clauses were either stricken or opened, alleging that in those instances, "the connection between the original cognovit clauses and the judgment debtor was, in fact, severed." Appellee's brief at 29. *See Hazer v. Zabala*, 26 A.3d 1166 (Pa.Super.2011) (holding invalid a cognovit appearing in an unsigned addendum that was incorporated by reference in agreement and attached after the signature page); *Scott v. 1523 Walnut Corp.*, 301 Pa.Super. 248, 447 A.2d 951 (1982) (general reference in 1972 amendment to the July 1, 1950 lease, without specific mention of cognovit clause, was insufficient to bind the tenant to the warrant of attorney clause set forth in that lease); *Solazo v. Boyle*, 365 Pa. 586, 76 A.2d 179 (1950) (confession of judgment provision in original contract held not to apply to subsequent oral modification); and *Jordan v. Berman*, 20 F.3d 1250 (3d Cir.1994) (cognovit clause in an amendment to a lease rendered the warrant invalid because the party who signed the amendment was not the same party who originally signed the lease).

We are mindful that "[a] warrant of attorney authorizing judgment is perhaps the most powerful and drastic document known to civil law" and "equivalent to a warrior of old entering a combat by discarding his shield and breaking his sword." *Cutler Corp., supra* at 236. For that reason, the courts of this Commonwealth require that a warrant of attorney be explicit and strictly construed. "[A] warrant of attorney to confess judgment must be self-sustaining; the warrant must be in writing and signed by the person to be bound by it; and the requisite signature must bear a direct relation to the warrant and may not be implied extrinsically nor imputed from assignment of the instrument containing the warrant." *Crum, supra* at 988. There should be no doubt that the lessee signed the warrant and that he was conscious of the fact that he was conferring a warrant upon the lessor to confess judgment in the event of breach. As our High Court held in *L.B. Foster Co. v. Tri–W Constr. Co.*, 409 Pa. 318, 186 A.2d 18, 19–20 (1962), "*[a] general reference in the body of an executed lease to terms and conditions to be found* outside the agreement is insufficient to bind the lessee to a warrant of attorney not contained in the body of the lease unless the lessee signs the warrant where it does appear. In short, a warrant of attorney to confess judgment is not to be foisted upon anyone by implication or by general and nonspecific reference." (emphasis in original).

This situation did not occur herein. The clause in question was clear and conspicuous in the lease and assignment as well as mentioned specifically in the amendment. Tenant's reliance upon our recent decision in *Hazer, supra,* is misplaced. Therein, we struck a confessed judgment, finding the judgment "invalid and unenforceable on its face[,]" because the cognovit clause was not contained in the commercial lease signed by the parties. *Id.* at 1172. The lease consisted of thirty-two paragraphs on five pages, and ¶ 30 was entitled, "MISCELLANEOUS PROVISIONS." That provision provided, "See attached Adden-

dum which is incorporated herein by reference." *Id.* at 1171. The first paragraph of the three-paragraph addendum, unsigned by either party, contained the cognovit clause permitting the landlord to confess judgment for accelerated rent upon default. This Court held that the tenant's signature was not in direct relation to the cognovit clause, the precise situation disapproved of in *Frantz Tractor Co., Egyptian Sands Real Estate, Inc.,* and *L.B. Foster Co., supra.*

The facts herein are also readily distinguishable from those in *Cutler Corp., supra,* where the cognovit clause was contained in one of eight fine-print paragraphs on the reverse side of the document. The confessed judgment was stricken because the clause was held not to be part of the contract. Similarly, in *Frantz Tractor Co., Inc., supra,* the court struck a confessed judgment based on a warrant of attorney contained on the unsigned, reverse side of the agreement, because the warrant did not establish that the lessee was aware that he was conferring power to confess judgment.

While the amendment herein does not restate the cognovit clause in its entirety, it does much more than generally incorporate the terms of the original lease. The amendment herein states that, "the confession of judgment provisions contained in both the Net Lease Agreement and the Assignment and Assumption of Net Lease Agreement are hereby republished and both Tenant and Assignee agree to be bound thereby in accordance with the terms thereof." Amendment at 2. Edward Bianchini initialed or signed conspicuous confession of judgment clauses in the lease, the assignment, and the guaranty, and then executed each of those documents. Finally, he signed the amendment, which not only incorporated the terms of the original lease, assignment and guaranty generally, but specifically republished the terms of the confession of judgment and clearly stated the parties' intent that it continue in effect. Mr. Bianchini's signature on behalf of the assignee and himself appears on page three of the three-page Amendment, immediately following the language confirming the parties' intention to be bound by the confession of judgment.[8]

The trial court held that Tenant's specific acknowledgement that it would continue to be bound by the confession of judgment clauses contained in the original lease, assignment, and guaranty and suretyship agreements, all signed and initialed by Mr. Bianchini, was the "clear manifestation of consent that is required to sustain the validity of a cognovit clause," citing *Egyptian Sands, supra.* We agree. This is not a case where the warrant was "foisted upon anyone by implication or by general and nonspecific reference." *L.B. Foster Co., supra,* at 19–20.

Next, Tenant alleges that the Landlord's prior exercise of the cognovit clause and

---

8. The language in the Amendment provided:
 In addition to and not any limitation of the foregoing, the confession of judgment provisions contained in both the Net Lease Agreement and the Assignment and Assumption of Net Lease Agreement are hereby republished and both Tenant and Assignee agree to be bound thereby in accordance with the terms thereof.
 Edward W. Bianchini hereby acknowledges that he has executed a Guaranty and Suretyship Agreement [ . . . ] The aforesaid Guaranty, including the confession of judgment provisions therein stated, is hereby deemed republished and the said Edward W. Bianchini agrees to be bound by the terms of said Guaranty, including but not limited to the confession of judgment provisions therein stated.
 Amendment at 2.

warrant of attorney at No. 03448 of 2010 exhausted the warrant and prohibited its re-use herein. Relying upon *Scott Factors, Inc. v. Hartley*, 425 Pa. 290, 228 A.2d 887, 889 (1967), Tenant alleges that, "once a judgment has been entered under a warrant of attorney, the authority to use the warrant vanishes and the warrant cannot again be exercised." Landlord counters that subsequent cases have interpreted *Scott Factors* as prohibiting the use of a warrant of attorney to collect the same debt or portion of a debt that has already been confessed. *See TCPF Limited Partnership v. Skatell*, 976 A.2d 571 (Pa.Super.2009); *B. Lipsitz Co. v. Walker*, 361 Pa.Super. 238, 522 A.2d 562 (1987). Furthermore, according to Landlord, *Scott Factors* also contains the proposition that "a warrant of attorney is a contractual agreement between the parties and the parties are free to determine the manner in which the warrant may be exercised[,]" and the "parties may design and contour an agreement as they see fit." *Id.* at 888; *see also Atl. Nat'l Trust, LLC v. Stivala Invs., Inc.*, 922 A.2d 919, 924 (Pa.Super.2007).

■ Herein, the warrant of attorney specifically provided that it "shall not be exhausted by one or more exercised [sic] thereof but successive actions may be commenced and successive judgments may be confessed or otherwise entered against Tenant from time to time as often as any of the rent and/or other amounts and sums shall fall or be due or be in arrears[.]"

Net Lease, § 21(A)(iv)(h)(ii). Thus, there is no merit in Tenant's argument that a prior exercise of the warrant in 2010 automatically extinguished it.

Tenant argues further that the trial court's conclusion that the within confessed judgment pertained to arrearages from a different time period is unsupported and the current confessed judgment is for back rent and fully accelerated rent, not successive months of back rent. Tenant contends that the exhaustion question at the very least raised sufficient doubts as to the validity of the warrant to necessitate the opening of the confessed judgment. Further, Tenant avers that since the trial court was required to accept Tenant's evidence as true, and resolve any doubt against Landlord, this meritorious defense compels the opening of the confessed judgment.[9]

Landlord represents that not a single dollar of the August 21, 2011 confession of judgment was previously paid or contemplated within the first warrant and that the two confessions attempted to collect "two wholly distinct and separate debts." Appellees' brief at 23. According to Landlord, the November 2010 judgment was based upon a liquidated damages provision contained in the guaranty and suretyship agreement in the event of default within the first twenty-four months of the lease term, *i.e.* April 17, 2009 through April 17, 2011. The judgment was subsequently vacated,[10] although Landlord acknowledges

9. Tenant avers that the judgment could have been stricken if Landlord had comported with Pa.R.C.P. 2952(a)(5)'s requirement that the complaint identify the proceedings where judgment had previously been entered on the instrument. We disagree, as whether a prior entry of judgment exhausts a warrant is a matter of substantive law. *See* Note to Pa. R.C.P. 2952(5). Furthermore, the warrant expressly authorizes multiple exercises. Moreover, since Tenant did not identify the

proceeding or attach the relevant docket entries confirming prior use of the warrant in its petition to open, the trial court did not have before it any evidentiary support for opening the judgment on this ground.

10. The trial court held that the warrant was not exhausted because the prior judgment was vacated. Tenant asserts this as error, citing the Supreme Court decision in *Am. Bowling Club, Inc. v. Kanefsky*, 370 Pa. 136,

that Tenant paid the arrearages on the rent. The current confessed judgment is for May 2011 through August 2011 outstanding rent, plus accelerated rent for the remainder of the lease term, together with late fees, taxes, insurance, utilities, and attorneys' fees.

The record confirms Landlord's position that the instant warrant was used to collect a separate and distinct debt. Since the confession of judgment clause provided it could be exercised multiple times, we see no obstacle to successive uses of the warrant of attorney to confess judgment for a different portion of the debt. For these reasons, Tenant's claim fails.

■ Next, Tenant argues that the lease was void and the warrant of attorney contained therein unenforceable because Landlord failed to transfer a liquor license to Tenant on the commencement date of the lease. Consequently, according to Tenant, Landlord must rely solely on the amendment as that was the only document that was valid. Since the amendment does not contain a cognovit clause, Tenant submits that there is no valid warrant. Tenant offers the lease itself and correspondence regarding the delay in the transfer of the license in support of this somewhat convoluted argument. The lease provides in pertinent part:

> 39. Conditions Precedent. The following shall be conditions precedent to Landlord's obligations under this Lease:
>
> A. Purchase of Liquor License # _____. Landlord has advised Tenant that [an affiliated entity] owns Liquor License _____ LID No. _____ (herein referred to as the "Liquor License").
>
> i. Tenant agrees that on the Commencement Date, Tenant shall purchase the Liquor License for the sum of Seventy Thousand ($70,000.00) Dollars from Landlord. [Tenant shall be responsible to pay all costs and fees incurred in the transfer process, including but not limited to attorneys' fees and costs.] Payment for the Liquor License shall be made by tenant to Landlord on the Commencement Date.
>
> B. If for any reason the Liquor License cannot be transferred to Tenant due to no fault of the Tenant, then this Lease shall be null and void and all funds paid by Tenant to Landlord shall be returned to Tenant without interest and the parties shall have no further obligation to each other.

Net Lease Agreement at ¶ 39.

By correspondence dated June 22, 2009, counsel for Tenant advised counsel for Landlord that, since Landlord failed to make the liquor license available for purchase on the commencement date of the lease, the lease was null and void. Tenant demanded return of its security deposit and first month's rent. Landlord, in response, averred that Tenant had improperly read Section 39 of the Lease, and that Landlord was not required to transfer the license on that date. Landlord maintained that the provision only required Tenant to pay for it on that date. In that correspondence, Landlord's counsel recounted a conversation with counsel for Tenant confirming that he would forward the documents to transfer the license, which he did, and advising that he expected counsel "to file the liquor license transfer naming SAB, LLC as transferee and Tenant under the

87 A.2d 646 (1952), finding the power exhausted and not subject to revitalization where the plaintiff voluntarily struck off the

judgment. We do not rely on the trial court's rationale in affirming. It is well settled that we may affirm on any basis.

Lease." Petition to Strike and/or Open Confessed Judgment, Exhibit F.

The lease language supports Landlord's reading of its obligations with regard to the liquor license. Since Tenant did not allege in the petition that the liquor license was never transferred, there is no basis for declaring the lease null and void. Hence, we do not reach Tenant's argument that the amendment, which did not contain the cognovit in its entirety, was alone insufficient to support the confession of judgment.

■ Tenant alleges that the court abused its discretion in refusing to open the judgment because it entitles Landlord to both possession of the leasehold property and fully accelerated rent for an eight-year period, thus permitting double recovery as Landlord re-let the premises. Tenant relies upon *Homart Development Co.*, *supra* (a landlord cannot confess judgment both for possession and all monies then due for the entire term of the lease) and *H.A. Steen Indus. v. Richer Commc'ns, Inc.*, 226 Pa.Super. 219, 314 A.2d 319, 322 (1973), for the proposition that allowing a landlord to obtain both accelerated rent and possession amounts to a double recovery for a single wrong.

Herein, as distinguished from *Homart* and *H.A. Steen*, Landlord did not confess judgment for both possession of the property and accelerated rent.[11] The issue, properly framed, is whether Landlord can confess judgment for accelerated rent when it was in possession of the property. Tenant pled that Landlord changed the locks on the leased premises, thus, denying it possession, and then sued for accelerated rent. Landlord countered that Tenant abandoned the property by ceasing operation as a restaurant and surreptitiously removing fixtures from the demised premises. *See Eckel v. Eiswerth*, 371 Pa. 490, 92 A.2d 174 (1952) (abandonment occurs when there is an intention to abandon coupled with conduct by which the intent is carried out).

■ Landlord cites *Turnway Corporation v. Soffer*, 461 Pa. 447, 336 A.2d 871 (1975) and the Restatement (Second) of Property, § 14.2, Comment g[12], for the proposition that where a tenant voluntarily abandons the demised premises, the landlord has the right to re-enter without the aid of legal process.[13] Furthermore,

11. We note that Landlord would have been entitled to confess judgment for ejectment and still seek money damages because the warrant of attorney permitted it and Pa. R.C.P. 2953(b) and 2972 do not preclude it.

12. Comment g provides:

g. Circumstances giving rise to the duty to resort to judicial process for the recovery of possession. The landlord, or incoming tenant, must resort to the speedy judicial remedy rather than self-help to recover possession of the leased property in the following circumstances. At the termination of the lease the tenant, or one holding under the tenant, leads the landlord, or the incoming tenant, reasonably to expect that the tenant intends to deprive him of free access to the leased property or any part thereof. If the acts of the tenant, or one holding under the tenant, are ambiguous, the landlord, or incoming tenant, is under a duty to inquire of the tenant as to his intentions before taking any action; and the rule of this section is applicable unless the inquiry reveals that the tenant has abandoned the premises and does not intend to return. Any conduct by the tenant which creates a reasonable expectation in the landlord, or incoming tenant, that the tenant does not intend to deprive him of free access to the premises may be regarded as an abandonment of the leased property so that entry will not be deemed self-help.
Restatement(Second) of Prop: Landlord & Tenant, § 14.2, comment g.

13. The net lease also provided, that upon default, regardless of whether or not the lease was terminated, Landlord could re-enter the premises without process of law, provided no

where a tenant abandons property, a non-breaching landlord has no duty to mitigate damages. *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082 (1998); *Trizechahn Gateway, LLC v. Titus*, 930 A.2d 524 (Pa.Super.2007) (*rev'd on other grounds* 601 Pa. 637, 976 A.2d 474 (2009)); *in accord* Restatement (Second) of Property, § 12.1, Comment k ("A tenant who abandons leased property is not entitled to insist on action by the landlord to mitigate the damages, absent an agreement otherwise. Abandonment of property is an invitation to vandalism, and the law should not encourage such conduct by putting a duty of mitigation of damages on the landlord."). In the case of abandonment, the landlord may either choose to allow the property to stand idle and hold the tenant liable for the entire rent, or he may re-lease it and hold the tenant liable for the difference, if any. *Stonehedge, supra.*

 *Stonehedge* does not disturb the general principle that a landlord must choose between taking possession of the property and collecting future rents. However, pursuant to that decision, where a commercial tenant vacates the leasehold, the landlord may seek accelerated rent if the lease so provides, and re-let the premises. The landlord, however, must credit tenant at execution for sums paid by the replacement tenant. The Restatement (Second) of Property similarly treats such situations where a landlord seeks both accelerated rent and possession. If the land-

lord terminates the lease and evicts the tenant before the acceleration clause is enforced, the landlord cannot recover rent for the post-eviction period. If the landlord collects accelerated rent and receives possession of the property by abandonment, the landlord may keep the accelerated rent, but is required to account to the tenant for rent received from a new tenant. If the tenant abandons the property, the landlord may sue and collect accelerated rent. However, the landlord must account to the tenant for rent from a new tenant. See Restatement (Second) of Property, § 12.1, Comment k.[14]

 Herein, there was a dispute as to whether or not Tenant abandoned the premises before Landlord changed the locks and resolution of that question determines whether Landlord was entitled to confess judgment for accelerated rent. In order to prove abandonment, the landlord bears the burden of demonstrating: (1) an intention on the part of the tenant to abandon; and (2) conduct by which the intention is carried into effect. *Turnway, supra.* Landlord denied that it had dispossessed Tenant and maintained that Tenant "abandoned the premises by destroying and removing fixtures and other property, including property which belonged to [Landlord], from the premises and vacating occupation thereof." Answer ¶ 35.

While the petition to strike and/or open the confessed judgment was pending, the

---

undue force was used, and Landlord could re-let the premises. Net Lease, § 21(A)(iv)(d).

14. Comment k provides in pertinent part:
 If the tenant abandons the premises, the rules of Comment i apply, but the landlord may enforce the acceleration clause if he does not terminate the lease. In this event, the landlord will receive the rent for the remainder of the term from the tenant who abandoned, and is obligated to account to

him for any rent received from a new tenant.
 Comment i clarifies:
 The tenant does not end his obligation to pay rent by abandoning the leased property, unless the landlord accepts what is in effect the tenant's offer to surrender the leased property, thereby terminating the lease.
 Restatement (Second) of Property, § 12.1, Comment k and i.

trial court presided over the October 25, 2011 hearing on Landlord's petition seeking relief due to Tenant's removal of Landlord's personal property from the premises. At that proceeding, no one disputed that Tenant was no longer operating its restaurant on the property and that it had removed at least seven items, including fixtures, from the leased premises and transferred them to a property on 7th Street that it was leasing. Nothing precluded the trial court from relying on the representations made at that proceeding in ruling on the petition. *See West Chester Plaza Associates v. Chester Engineers,* 319 Pa.Super. 196, 465 A.2d 1297, 1300 (1983) (holding trial court could properly rely upon depositions and additional testimony in deciding petition to open). The only issue was whether, on those undisputed facts, Tenant's conduct constituted abandonment.

The trial court did not expressly address this issue in its opinion. We find, however, that the record establishes that Tenant abandoned the leasehold when, after ceasing operation, it removed fixtures and equipment from the premises. Tenant was already several months in default on the rent. Not only did Tenant intend to abandon the premises, but Tenant also took action in furtherance of that intent. Thus, Landlord was within its rights to reenter the premises, change the locks, and confess judgment for accelerated rent. However, Landlord concedes that double recovery, to the extent it results in unjust enrichment, is not countenanced, and Tenant would be entitled to a credit against the judgment amount at execution if Landlord were to collect rent from any replacement tenant. *See Walter E. Heller & Co. v. Lombard Corp.,* 423 Pa. 333, 223 A.2d 716 (1966). Thus, this argument does not provide Tenant with a meritorious defense to the validity of the confessed judgment for accelerated rent, but does support a credit against the judgment at execution if Landlord receives rents from a new tenant.

Tenant's seventh and eighth issues are intertwined and we will dispose of them together. Tenant claims that the judgment should be opened, as it was excessive in light of the hundreds of thousands of dollars Tenant spent on leasehold improvements just to render the premises safe and code compliant. Tenant points to the fact that Landlord reduced the monthly rent from $12,500 to $10,500 per month in 2010 and suggests that this action was taken "in light of the substantial costs incurred" in readying the premises. Opening the judgment, Tenant avers, would allow the court to provide Tenant with "an equitable rebate" to compensate it for the sums it expended in permanently improving the property.

Tenant's reliance upon *In re TM Carlton House Partners,* 93 B.R. 859, 869 (Bankr.E.D.Pa.1988), for the proposition that the judgment should be opened to permit the court to order an equitable rebate is misplaced, however. While commercial tenants may be entitled to a rent rebate where the landlord has failed to provide a space in conformity with lease expectations, the only expectation herein was that the premises would be rented "as is." Accordingly, the allegedly substandard condition of the leased premises did not constitute a default by Landlord on the lease and, absent a default, Tenant was not entitled to a rent rebate. *See Teodori v. Werner,* 490 Pa. 58, 415 A.2d 31, 32 (1980) (landlord's violation of the parties' noncompete clause constituted default under the lease and tenant could assert the defense and seek the contractual remedy of abatement of rent). We see nothing in the agreement between the parties that would entitle Tenant to a credit against the rent

for the value of permanent improvements it made to the leasehold.

■ Finally, Tenant alleges that the trial court erred in refusing to issue a stay pursuant to Pa.R.C.P. 2959. The grant of a stay is within the discretion of the trial court. In light of this Court's affirmance of the trial court's denial of Tenant's petition to strike and/or open the confessed judgment, we find no abuse of discretion in refusing to issue a stay.

For all of the foregoing reasons, we affirm the trial court's denial of Tenant's petition to strike and/or open the confessed judgment.

Order affirmed.